## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**XL SPECIALTY INSURANCE
COMPANY, a/s/o, THYSSENKRUPP
MATERIALS TRADING NA, LLC**,
334 Madison Avenue
Morristown, NJ 07960

       Plaintiff,

vs.

**C. STEINWEG (BALTIMORE), INC.,
aka, C. STEINWEG GROUP, aka, C.
STEINWEG USA, INC. and affiliated
companies**
4505 North Point Boulevard
Baltimore, MD 21219

Serve on: *Resident Agent*
James W. Bartlett, III, Esq.
250 West Pratt Street, Suite 1900
Baltimore, MD 21201

and

**AG RO TRANSPORT INC.**
1026 South Vail Avenue
Arlington Heights, IL 60005

Serve on: *Resident Agent*
Galina Nagy
1026 South Vail Avenue
Arlington Heights, IL 60005

and

**ROLLING RANGERS LOGISTICS LLC**
35155 County Road FF
Wray, CO 80758

Serve on: Resident Agent
Nestor Manuel Pacheco Marquez
35155 County Road FF
Wray, CO 80758

Civil Case No.: 1:25-CV-03490

JURY TRIAL DEMANDED

and

**UNIVERSAL FIRE AND CASUALTY
INSURANCE COMPANY**
2850 Dixie Highway, Suite 100
Waterford, MI 48328


Serve on: *Resident Agent*
Corporation Service Company
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN 46204

      Defendants.

## COMPLAINT

Plaintiff, XL Specialty Insurance Group ("XL"), as subrogee of, Thyssenkrupp Materials

Trading NA, LLC ("TMT"), by its attorneys James D. Skeen, Terry L. Goddard Jr., and Skeen &

Kauffman, LLP, hereby sues C. Steinweg (Baltimore) Inc. ("Steinweg"), Ag Ro Transport Inc.

("Ag Ro"), Rolling Rangers Logistics LLC ("RRL"), (collectively referred to as "Defendants")

and Universal Fire and Casualty Insurance Company ("UFCIC") and in support of its claims

asserts as follows:

## INTRODUCTION

1.  This case arises out of the mis-delivery, loss, and/or damage to over 39,000 pounds of

nickel pellets (the "Cargo") in interstate commerce owned by TMT, warehoused by Steinweg,

transported by Ag Ro, potentially brokered by UFCIC's insured, RRL.  The Cargo, meant for

delivery to The Shepherd Chemical Company ("Shepherd") of Middletown, Ohio, never arrived

at its intended destination.

## THE PARTIES

2.  At all times relevant to this Complaint, XL was a State of Delaware insurance company that issued an insurance policy regarding the Cargo purchased by TMT that obligated XL to cover any loss to the Cargo for the benefit of TMT.

3.  On information and belief, Steinweg is a State of Maryland corporation that provides cargo storage and loading service with a warehouse located in Baltimore, Maryland that housed the Cargo under contract with TMT.

4.  On information and belief, Ag Ro is a State of Illinois corporation that provides interstate cargo transport services under USDOT Number 3052252 and incorrectly transported the Cargo to an unknown location near Indianapolis, Indiana.

5.  On information and belief, RRL is a State of Colorado limited liability company providing interstate cargo broker services, appears on the Indiana Bill of Lading ("RRL BOL") presumably presented to Steinweg, and has been listed on broker alert pages since at least October 29, 2024.

6.  On information and belief, UFCIC is an Indiana corporation with its principal place of business located in the State of Michigan and issued a Federal Motor Carrier Safety Administration ("FMCSA") BMC-84 surety bond on behalf of RRL.

## JURISDICTION AND VENUE

7.  Jurisdiction over this action is proper under 28 U.S.C. § 1331 as Plaintiff's claims arise out of United States statutes and 28 U.S.C. §1332(a) as each party is a citizen of a different state and XL's claim exceeds $75,000.

8.  Venue over this action is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to this case occurred in Maryland.

## FACTS COMMON TO ALL COUNTS

9. TMT is a State of Michigan company with its United States headquarters in Houston, Texas and is a worldwide leader in industrial engineering and steel production that owned the Cargo.

10. Prior to October 31, 2024, TMT had agreed to sell the Cargo to Shepherd for delivery to its facility in Middletown, Ohio.

11. At the time of the sales agreement, the cargo was being stored at the Baltimore warehouse facility of Steinweg under a contract between TMT and Steinweg.

12. TMT engaged Celtic Marine Corporation, doing business as, Celtic Marine and Logistics ("Celtic")[1] to arrange to transport the Cargo from the Steinweg warehouse in Baltimore to Ohio by November 1, 2024.

13. Celtic sub-contracted and/or retained Blue Marlin Transport ("BMT") to transport the Cargo by trailer from Balitmore to Ohio.

14. Celtic provided Blue Marlin Transport ("BMT") withthe Cargo pick up authorization number provided by Steinweg.

15. On information and belief, the BMT that Celtic was dealing with was a fraudulent entity.

16. Upon information and belief, the Cargo carriage was reassigned to Bakar Trucking LLC ("Bakar"), an Ohio limited liability company.

17. Celtic provided the pick-up authorization information to Bakar.

18. Pursuant to the terms of the contract between Steinweg and TMT, Steinweg was advised on October 30, 2024, that Bakar would be picking up the Cargo.

---

[1] Thyssenkrupp Materials Trading NA, LLC has a pending action against Celtic Marine Corporation for its actions regarding the Cargo in the United States District Court for the Middle District of Louisiana in case number 3:25-CV-00464 JWD-RLB.

19. On October 31, 2024, Ag Ro contacted Steinweg and advised it that BMT driver Fred Bogdou ("Mr. Bogdou") would be picking up the Cargo and provided Steinweg with the proper authorization number and truck identification information.

20. Further investigation has revealed that BMT tendered the load to Ag Ro under the RRL BOL.

21. Later on October 31, 2024, driver Mr. Bogdou arrived at the Steinweg warehouse and Steinweg loaded the Cargo onto the truck.

22. After the truck left Steinweg, the Bakar truck arrived for the Cargo.

23. Once Celtic learned of these events, it began trying to contact BMT, Ag Ro, and Mr. Bogdou.

24. Celtic was able to reach BMT, which advised Celtic that they had the Cargo, but delivery would be delayed because of mechanical problems with the Ag Ro truck.

25. These were false statements by BMT and eventually BMT stopped communicating with Celtic.

26. Ag Ro advised Celtic that they had been retained by RRL on a blind shipment and were told to identify themselves as BMT to Steinweg.

27. The RRL BOL listed the consignee as Prime Cargo ("PC") in Indianapolis, Indiana.

28. PC advised Celtic that they had arranged a transload with an unknown party and that after Mr. Bogdou delivered the Cargo in Indiana he returned a short time later and retrieved the Cargo.

29. The current location of the Cargo is unknown.

30. Further investigation has revealed that UFCIC issued a FMCSA BCM-84 surety bond to RRL, which was set to be cancelled on September 24, 2025, but its USDOT status is still active.

31. As part of the carriage of the Cargo, TMT purchased insurance from XL to cover any loss and/or damages sustained to the Cargo in transit (the "Policy").

32. Under the Policy, XL agreed to indemnify the owner of the Cargo, and its assigns, against loss of or damage to the Cargo while in transit, including mitigation expenses with an applicable deductible of $10,000.00.

33. As a result of the loss of the Cargo, TMT made a claim under the Policy and XL became obligated to make payment, and did make payment under the Policy, in the total amount of $303,306.74 and, as a result of that payment, became subrogated to TMT's interests in this Complaint.

34. Claims alleged herein contain causes of action for loss and/or damage to cargo during interstate motor truck transit, and are claims under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 for bailment, negligence, breach of contract of carriage at common law and/or under 49 U.S.C. § 14101.

## COUNTS

### Count I: Breach of Contract (Steinweg)

35. Paragraphs 1 – 36 are hereby incorporated by reference as if fully set forth below.

36. Steinweg agreed, under written contract and in return for good and valuable consideration, to store and release the Cargo as directed and to maintain the Cargo in good order and securely and to only surrender the Cargo to those designated in the same good order, condition, and quantity as when received.

37. Steinweg agreed to accept, store, carry and maintain said cargo in like good order, quantity, and condition as when received and to deliver in the same good order, condition, and quantity as when received.

38. Thereafter, in breach of and in violation of said agreement, Steinweg, did not maintain the Cargo in the same good order, condition, and quantity as when received.

39. To the contrary, Steinweg failed to properly store, carry, maintain, and/or deliver the Cargo in the same good order, condition, and quantity as when received by releasing the Cargo to an entity not authorized by TMT and by failing to notify TMT that the Cargo was being released to an entity other than thatdesignated to Steinweg.

40. As a direct result of Steinweg's breach, TMT suffered loss of the Cargo totaling $313,306.74, including TMT's applicable deductible under the Policy.

41. Plaintiff has therefore been damaged in the sum of $313,306.74, no part of which has been paid, despite demand therefor and as a result of no negligence on the part of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests judgment against Steinweg in an exact amount to be determined at trial but currently believed to be $313,306.74, plus costs of suit, pre-judgment interest, and such other and further relief as the Court deems just to provide.

## Count II: Bailment (Steinweg)

42. Paragraphs 1 – 43 are hereby incorporated by reference as if fully set forth below.

43. Steinweg agreed, as a bailee and/or warehouseman for hire, to safely care for and store the Cargo and deliver the Cargo in like good order, quantity, and condition to the person designated by TMT to receive such goods.

44. Thereafter, in breach of and in violation of said agreement, Steinweg did not deliver the Cargo to the entity designated to receive the Cargo and failed to adviseTMT when another non-designated entity sought possession of the Cargo.

45. To the contrary, Steinweg failed to properly store and maintain the Cargo in the same good order and condition as when received by releasing the Cargo to an entity not authorized to take possession of the Cargo.

46. Consequently Steinweg improperly released the Cargo causing a loss of the Cargo.

47. Plaintiff has therefore been damaged in the sum of $313,306.74, including TMT's applicable deductible under the Policy, no part of which has been paid, despite demand therefor and as a result of no negligence on the part of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests judgment against Steinweg in an exact amount to be determined at trial but currently believed to be $313,306.74, plus costs of suit, pre-judgment interest, and such other and further relief as the Court deems just to provide.

<u>Count III: Negligence (All Defendants)</u>

48. Paragraphs 1 – 49 are hereby incorporated by reference as if fully set forth below.

49. Defendants, owed TMT, the owner of the Cargo, a duty of reasonable care with respect to the shipment of the Cargo, but breached their duty of care.

50. Defendants' negligence includes, but is not limited to, failing to properly store, protect, safeguard, and care for the Cargo, among other acts and omissions.

51. As a direct result of the breach, the Cargo was lost.

52. As a direct result of Defendants' negligence, Plaintiff suffered foreseeable damages.

53. Plaintiff has therefore been damaged in the sum of $313,306.74, including TMT's applicable deductible under the Policy, no part of which has been paid, despite demand therefor and as a result of no negligence on the part of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, in an exact amount to be determined at trial but currently believed to be $313,306.74,

plus costs of suit, pre-judgment interest, and such other and further relief as the Court deems just to provide.

## Count IV: Carmack Liability (Ag Ro)

54. Paragraphs 1 – 55 are hereby incorporated by reference as if fully set forth below.

55. This is a cause of action for loss to cargo, and is a claim under the Carmack Amendment, 49 U.S.C. § 14706, as hereinafter more fully appears.

56. In breach of and in violation of its agreement to transport the cargo, Ag Ro did not deliver said cargo in the same good order, condition, and quantity as when received.

57. To the contrary, as a result of Ag Ro's negligence in its interactions with BMT the Cargo was lost and not delivered in like condition.

58. By virtue of said loss, TMT suffered a total loss of $313,306.74, or some other amount to be proven at trial.

59. Plaintiff has therefore been damaged in the sum of $313,306.74, including TMT's applicable deductible under the Policy, no part of which has been paid, despite demand therefor and as a result of no negligence on the part of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests judgment against Ag Ro in an exact amount to be determined at trial but currently believed to be $313,306.74, plus costs of suit, pre-judgment interest, and such other and further relief as the Court deems just to provide.

## Count V: Surety Bond (UFCIC)

60. Paragraphs 1 – 61 are hereby incorporated by reference as if fully set forth below.

61. The FMCSA BMC-84 Surety Bond issued by UFCIC to RRL protects shippers by ensuring freight brokers, like RRL, meet their financial obligations and adhere to FMCSA regulations covering a shipper's financial losses caused by a broker's contractual failures.

62. The FMCSA BMC-84 Surety Bond provides financial recourse for shippers if the broker defaults, with claims paid by the surety company, like UFCIC, up to the surety bond limit of $75,000.

63. XL filed a claim under the bond UFCIC issued to RRL on August 29, 2025, and UFCIC has failed to respond to that claim.

64. A shipper such as TMT is an intended beneficiary of the surety bond issued by UFCIC to RRL under the FMCSA regulations and is designed to protect the shipper against broker defaults.

65. As a direct result of omissions and failures on the part of RRL, TMT suffered the loss of the Cargo and damages in excess of $75,000.

66. UFCIC is obligated under the surety bond issued to RRL to compensate XL, as TMT's insurance carrier, for the loss suffered by TMT.

**WHEREFORE**, Plaintiff respectfully requests judgment against UFCIC in an exact amount to be determined at trial but not in excess of the bond amount, plus costs of suit, pre-judgment interest, and such other and further relief as the Court deems just to provide.

Respectfully submitted this 23rd day of October, 2025.

/s/ James D. Skeen
James D. Skeen (00010)
Terry L. Goddard Jr. (15460)
Skeen & Kauffman, LLP
9256 Bendix Road, Suite 102
Columbia, MD 21045
Telephone:  (410) 625-2252
Facsimile:  (410) 925-2292
jskeen@skaufflaw.com
tgoddard@skaufflaw.com

Attorneys for Plaintiff