**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| XL SPECIALTY INSURANCE CO., A/S/O, THYSSENKRUPP MATERIALS TRADING NA, LLC, | * | |
| Plaintiff, | * | Civil No. 25-3490-BAH |
| v. | * | |
| C. STEINWEG (BALTIMORE), INC., ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff XL Specialty Insurance Company ("XL" or "Plaintiff")[1], as subrogee of Thyssenkrupp Materials Trading NA, LLC ("TMT"), brought suit against C. Steinweg (Baltimore), Inc. ("Steinweg"), Ag Ro Transport Inc. ("Ag Ro"), Rolling Rangers Logistics ("RRL"), and Universal Fire and Casualty Company ("Universal"), alleging breach of contract and other claims related to Defendants' handling of cargo entrusted to them by TMT. ECF 1. Pending before the Court is Steinweg and Ag Ro's (collectively "Defendants") motion for joinder or in the alternative, to dismiss for failure to join.[2] ECF 23. Plaintiff responded, ECF 26, and Defendants

[1] The caption in Plaintiff's complaint refers to XL as "XL Specialty Insurance Company," though the opening paragraph of the complaint refers to XL as "XL Specialty Insurance Group." ECF 1. For the purposes of this memorandum opinion and accompanying order, the Court uses the name in the caption.

[2] The Court refers to Steinweg and Ag Ro collectively as Defendants because Universal was voluntarily dismissed from this action on January 20, 2026, *see* ECF 19, and RRL has not answered or otherwise entered an appearance in this action, resulting in the clerk's entry of default against RRL, *see* ECF 17.

replied, ECF 27. All filings include memoranda of law.[3] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendants' motion to join Celtic is GRANTED and Defendants' motion in the alternative to dismiss for failure to join is DENIED.

# I. BACKGROUND

## A. Factual Allegations

This case concerns the alleged "mis-delivery, loss, and/or damage to over 39,000 pounds of nickel pellets" (the "Cargo") owned by TMT and entrusted to Defendants for delivery to The Shepherd Chemical Company ("Shepherd") in Middletown, Ohio. ECF 1, at 2 ¶ 1. Plaintiffs allege both federal question jurisdiction and diversity jurisdiction. *Id.* at 3 ¶ 7.

### 1. The Parties and Other Relevant Actors

TMT is a Michigan company headquartered in Houston, Texas. *Id.* at 4 ¶ 9. TMT "is a worldwide leader in industrial engineering and steel production that owned the Cargo" at the heart of this case. *Id.* XL is a Delaware "insurance company that issued an insurance policy regarding the Cargo purchased by TMT that obligated XL to cover any loss to the Cargo for the benefit of TMT." *Id.* at 3 ¶ 2. TMT purchased insurance from XL to cover any loss of, or damage sustained to, the Cargo while in transit. *Id.* at 6 ¶ 31.

Steinweg is a Maryland corporation that provides cargo storage and loading services, with a warehouse located in Baltimore, Maryland, that housed the Cargo under contract with TMT. *Id.* at 3 ¶ 3. Ag Ro is an Illinois corporation that provides interstate cargo transport services and that allegedly incorrectly transported the Cargo to an unknown location near Indianapolis, Indiana. *Id.*

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

¶ 4. RRL is a Colorado limited liability company that provides interstate cargo broker services and that was also involved in arranging the transport of the Cargo. *Id.* ¶ 5, at 5 ¶ 20.

Shepherd, which is not a party to this case, is the entity to whom the Cargo was supposed to be delivered. *Id.* at 2 ¶ 1. Celtic Marine Corporation ("Celtic") is a company that was allegedly hired to transport the cargo from Baltimore to Ohio, and whose joinder Defendants seek through the pending motion. *Id.* at 4 ¶ 12. Finally, two other non-party actors are relevant to this case: Blue Marlin Transport ("BMT"), which was allegedly sub-contracted by Celtic to transport the Cargo, *id.* ¶ 13, and Bakar Trucking LLC ("Bakar"), an Ohio corporation to whom the Cargo was allegedly reassigned, *id.* ¶ 16.

2. <u>The Lost Cargo</u>

Prior to October 31, 2024, TMT agreed to sell the Cargo to Shepherd, with delivery to Shepherd's facility in Middletown, Ohio. *Id.* ¶ 10. At the time of the agreement, the Cargo was allegedly being stored in Steinweg's Baltimore warehouse ("the Steinweg warehouse") under a contract between TMT and Steinweg. *Id.* ¶ 11. TMT engaged Celtic to arrange the transport of the cargo from the Steinweg warehouse in Baltimore to Ohio by November 1, 2024. *Id.* ¶ 12. Celtic then subcontracted BMT to transport the Cargo by trailer from Baltimore to Ohio, providing BMT with a pick-up authorization number provided by Steinweg. *Id.* ¶¶ 13–14.

However, Plaintiff alleges that "the BMT that Celtic was dealing with was a fraudulent entity." *Id.* ¶ 15. The Cargo was then reassigned, though the complaint does not clarify by whom, to Bakar, and Celtic provided the pick-up authorization information to Bakar.[4] *Id.* ¶¶ 16–17. On

[4] Though not present in the complaint, Plaintiff seems to clarify in its opposition that following Celtic's initial assignment of the Cargo to BMT, "Celtic was unable to confirm with BMT that it would be able to pick up and deliver the Cargo on time. As a consequence, Celtic engaged Bakar to transport the Cargo to Ohio from Baltimore." ECF 26, at 2. Defendants appear to agree with this version of events, as they state in their motion for joinder that after Celtic subcontracted BMT,

October 30, 2024, Steinweg was advised, though the complaint does not specify by whom, that Bakar would be picking up the Cargo. *Id.* ¶ 18. However, the next day, October 31, 2024, Ag Ro contacted Steinweg and advised it that a BMT driver, Fred Bogdou ("Mr. Bogdou"), would be picking up the Cargo (in contrast to Bakar picking up the Cargo, as Steinweg was advised by Celtic) and provided Steinweg with the proper authorization number and truck identification information. *Id.* at 5 ¶ 19. BMT allegedly "tendered the load to Ag Ro under" RRL's bill of lading.[5] *Id.* ¶ 20. Later on October 31, 2024, BMT's Mr. Bogdou arrived at the Steinweg warehouse and Steinweg loaded the Cargo onto the truck. *Id.* ¶ 21. After Mr. Bogdou's truck left Steinweg, the Bakar truck arrived to pick up the Cargo. *Id.* ¶ 22.

"Once Celtic learned of these events, it began trying to contact BMT, Ag Ro, and Mr. Bogdou." *Id.* ¶ 23. Celtic reached BMT, which advised Celtic that it had the Cargo but that delivery would be delayed due to mechanical problems with the Ag Ro truck. *Id.* ¶ 24. Plaintiffs allege that "[t]hese were false statements by BMT and eventually BMT stopped communicating with Celtic." *Id.* ¶ 25. Celtic also reached Ag Ro, and Ag Ro advised Celtic that it "had been retained by RRL on a blind shipment and [was] told to identify [itself] as BMT to Steinweg." *Id.* ¶ 26. The RRL bill of lading "listed the consignee as Prime Cargo" ("PC") in Indianapolis,

---

"Celtic concluded that the [BMT] it 'was dealing with was a fraudulent entity,' so Celtic 'reassigned [the Cargo] to Bakar Trucking LLC[.]" ECF 23-1, at 2 (quoting ECF 1, at 4 ¶¶ 15–16) (second bracket in original). The Court notes that "a plaintiff 'cannot, through the use of motion briefs, amend the complaint.'" *Wilson v. Detweiler*, Civ. No. SAG-20-869, 2020 WL 4053827, at *4 (D. Md. July 20, 2020) (quoting *Mills v. State Hwy. Admin.*, Civ. No. PWG-13-3727, 2015 WL 72270, at *3 (D. Md. Jan. 5, 2015)). However, because both parties provide a similar account that provides useful context for understanding an unclear situation, and because the supplemented information is not dispositive in the context of the current motion, the Court provides it here for context.

[5] "A bill of lading is a receipt given by a carrier for goods shipped, and a contract containing the terms of their carriage." *Allied Signal Techn. Servs. Corp. v. M/V Dagmar Maersk*, 234 F. Supp. 2d 526, 528 (D. Md. 2002) (quotation omitted).

Indiana.[6] *Id.* ¶ 27. PC advised Celtic that "they had arranged a transload with an unknown party and that after Mr. Bogdou delivered the Cargo in Indiana[,] he returned a short time later and retrieved the Cargo." *Id.* ¶ 28. As of the filing of the complaint, the location of the Cargo was unknown. *Id.* ¶ 29.

Under the insurance policy purchased by TMT and provided by XL, "XL agreed to indemnify the owner of the Cargo, and its assigns, against loss of or damage to the Cargo while in transit, including mitigation expenses with an applicable deductible of $10,000.00." *Id.* at 6 ¶ 32. After the Cargo was lost, TMT made a claim under its insurance policy to XL, and XL made a payment to TMT totaling $303,306.74. *Id.* ¶ 33. Consequently, XL "became subrogated to TMT's interests in [the] Complaint." *Id.*

3. Parallel Action

As Plaintiff cites in its complaint, *see* ECF 1, at 4 n.1, and as relevant to the pending motion, on May 29, 2025, TMT filed an action against Celtic in the Middle District of Louisiana ("the LA Action"), in case number 3:25-CV-00464 JWD-RLB.[7] In that action, TMT brought claims for breach of contract, negligence, and gross negligence against Celtic, seeking the same amount in

---

[6] Though not present in Plaintiff's complaint, Plaintiff states in its opposition that RRL—the company that originally engaged Ag Ro—was also a fraudulent company, and implies that Plaintiff *did* allege as much in its complaint. *See* ECF 26, at 3 (quoting ECF 1, at 4 ¶ 15, at 5 ¶¶ 20, 25). As in footnote 4, *supra*, the Court provides this information only for context, while recognizing that a plaintiff cannot amend their pleading via motions practice.

[7] The Court takes judicial notice of the LA Action. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (quoting Fed. R. Evid. 201(b)(2)) ("Pursuant to Fed. R. Evid. 201(b)(2), '[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (brackets in original). Indeed, the Fourth Circuit has noted "that '[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'" *Id.* (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 6106 at 505 (1977)).

damages that XL seeks in the present action: $313,306.74, in addition to "surveying fees and expenses[.]" *See* ECF 23-1, at 3; ECF 26, at 3. Celtic then filed a third-party complaint against Steinweg, Ag Ro, and BMT. *See* ECF 23-1, at 3; ECF 26, at 3. As of the filing of the currently pending motion, the LA Action had been stayed pending the outcome of the Fifth Circuit's decision in *Crane v. Liberty Lane*, No. 25-40012. *See* ECF 23-1, at 3; ECF 26, at 3. In its opposition, Plaintiff "acknowledges that the loss underlying the Louisiana case is the same loss at issue in [the present] case." ECF 26, at 3.

**B. Procedural History**

Plaintiff filed its complaint on October 23, 2025, bringing claims for breach of contract and bailment against Steinweg (Counts I–II), negligence against all defendants (Count III), Carmack Liability against Ag Ro (Count IV), and surety bond liability against Universal (Count V). ECF 1. Steinweg answered the complaint on December 15, 2025. ECF 11. On December 16, 2025, XL and Ag Ro filed notice of a proposed consent order to dismiss Count III with respect to Ag Ro, ECF 13, which the Court granted on December 17, 2025, ECF 14. On January 9, 2026, XL moved for the clerk's entry of default for want of answer or other defense as to RRL, ECF 16, and default was entered against RRL on January 12, 2026, ECF 17. On January 20, 2026, XL and Universal filed a notice of voluntary dismissal of Count V, the claim against Universal, ECF 19, which the Court approved the same day, ECF 20. The remaining claims, then, are for breach of contract and bailment against Steinweg (Counts I–II), negligence against Steinweg and RRL (Count III), and Carmack Liability against Ag Ro (Count IV).

On March 25, 2026, Steinweg and Ag Ro filed a joint motion to join Celtic as a co-defendant pursuant to Federal Rule of Civil Procedure 19 or, in the alternative, to dismiss the case

for failure to join a necessary party pursuant to Federal Rule of Civil Procedure 12(b)(7). ECF 23. XL responded, ECF 26, and Defendants replied, ECF 27. That motion is now ripe for review.

## II. <u>LEGAL STANDARD</u>

### A. Federal Rule of Civil Procedure 12(b)(7)

"Pursuant to Rule 12(b)(7), a defendant may move to dismiss a complaint for 'failure to join a party under Rule 19' before filing a responsive pleading." *Peterson v. Harrah's NC Casino Co., LLC*, 169 F.4th 520, 524 (4th Cir. 2026) (quoting Fed. R. Civ. P. 12(b)(7)). Further, "a district court ruling on a Rule 12(b)(7) motion may consider materials beyond the pleadings and make factual findings based on them." *Id.* "Because Rule 12(b)(7) incorporates Rule 19, a motion to dismiss under Rule 12(b)(7) turns on Rule 19's standards." *Id.*

### B. Federal Rule of Civil Procedure 19

Federal Rule of Civil Procedure 19 "sets up 'a two-step inquiry.'" *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 950 (4th Cir. 2020) (quoting *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999)). "[A] district court asks first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)." *Gunvor SA v. Kayablian*, 948 F.3d 214, 218 (4th Cir. 2020). "Neither prong of Rule 19 is to be applied merely as a 'procedural formula.'" *McKiver*, 980 F.3d at 951 (quoting *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014)). Instead, "[t]hat determination 'must be made pragmatically, in the context of the "substance" of each case[.]'" *Kayablian*, 948 F.3d at 219 (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968)). "If the nonjoined party is necessary and indispensable to the action, but joinder would destroy subject matter jurisdiction, the court must dismiss the action." *Kayablian*, 948 F.3d at 218–19. However, "[c]ourts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered

only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc.*, 186 F.3d at 440. Ultimately, the "burden falls to [the defendant] to show that [the plaintiff has] failed to join a necessary and indispensable party." *Pillar to Post*, Civ. No. DKC-18-3761, 2020 WL 1158583, at *2 (D. Md. Mar. 10, 2020); *see also Am. Gen. Life & Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).

## III. <u>ANALYSIS</u>

Defendants move to join Celtic as a co-defendant in this case, and in the alternative, to dismiss the case for failure to join a necessary party. ECF 23. The Court considers whether Celtic is a necessary party before turning to the question of whether joining Celtic is feasible.

### A. Whether Celtic is a Necessary Party

Under Rule 19(a), party is required to be joined, if feasible, if (1) they are subject to service of process; (2) their joinder will not deprive the Court of subject matter jurisdiction; and (3) the court "cannot accord complete relief among existing parties" in that person's absence or the person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may" practically impair or impede the person's ability to protect their interest or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a); *see also Al-Sabah v. World Business Lenders, LLC*, Civ. No. SAG-18-2958, 2020 WL 3868989, at *10 (D. Md. 2020); *McKiver*, 980 F.3d at 950.

Because XL concedes that Celtic's joinder would not deprive the Court of subject matter jurisdiction, *see* ECF 26, at 8, the Court considers the first and third factors before considering whether joining Celtic is feasible.

1. Whether Celtic is Subject to Service

XL briefly argues that "Defendants have failed to show that Celtic would be 'subject to service of process.'" ECF 26, at 8 (quoting Fed. R. Civ. P. 19(a)(1)). Specifically, XL states, "Celtic's closest office location to this district is in Monroeville, Pennsylvania, which is over 100 miles from 'where summons [is] issued.'" *Id.* (quoting Fed. R. Civ. P. 4(k)(1)(B)) (brackets in original). However, as Defendants point out in reply, ECF 27, at 2, Defendants need only satisfy one of the requirements of Federal Rule of Civil Procedure 4(k)(1)(A–C), and the complaint itself establishes this Court's personal jurisdiction over Celtic.

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002). "Maryland courts have concluded that the State's longarm statute, Md. Code Ann., Courts & Jud. Proc. § 6–103, expands Maryland's exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment." *Id.* "Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996). Personal jurisdiction may be general or specific. *ALS Scan, Inc.*, 293 F.3d at 711. To determine specific jurisdiction, the Court considers "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* at 712.

Here, the allegations in XL's complaint establish specific personal jurisdiction over Celtic. As alleged, Celtic purposely availed itself of this district by conducting business within Maryland, agreeing to transport the Cargo from Baltimore to Ohio, and sub-contracting other companies to do so. *See* ECF 1, at 4 ¶¶ 13–14. Further, this suit arises at least in part out of Celtic's agreement to transport the Cargo and the ensuing misconduct or negligence that allegedly transpired as related to that agreement. Celtic is thus subject to service of process.[8]

2. Whether Celtic is a Necessary Party

Under Rule 19, there are effectively three circumstances under which a person "must be joined as a party." First, a person must be joined if "in that person's absence, the court cannot accord complete relief among existing parties." Rule 19(a)(1)(A). Second, a person must be joined if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Rule 19(a)(1)(B)(i). Third, a person must be joined if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Rule 19(a)(1)(B)(ii). Because the Court finds that Celtic is a necessary party under Rule 19(a)(1)(B)(ii),

[8] If there were any doubt as to this Court's personal jurisdiction over Celtic, the Court may take judicial notice of the fact that Celtic is also a federally licensed property broker pursuant to 49 U.S.C. § 13904, and is registered under with the Federal Motor Carrier Safety Administration ("FMCSA") under docket number MC-00279576. *See* FMCSA, "Company Snapshot," available at https://perma.cc/LM2D-SJJV (last accessed Oct. 28, 2026). Per 49 C.F.R. § 366 et seq., Celtic was required to file a blanket designation of process agents for each state in which it is authorized to operate, including Maryland. FMCSA records show that Celtic's Maryland process agent is #1 A+ Agents of Process, Inc., which has a Maryland Process Agent named Priority Process located at 326 N. Stonestreet Avenue, Suite E, Rockville, Maryland 20850. *See* FMCSA, "Operating Authority Information," available at https://motus.dot.gov/customer/2216863/ operating-authority-detail/36c55a59-ab29-4187-a3f2-a5834ede1d27 (last accessed Oct. 28, 2026).

it is unnecessary to reach the parties' arguments as to whether Celtic is a necessary party under Rule 19(a)(2)(A) or Rule 19(a)(1)(B)(i), *see* ECF 23-1, at 6–8; ECF 26, at 4–8; ECF 27, at 4–8.

Defendants argue that "Celtic's absence . . . exposes Defendants to a substantial risk of incurring multiple or inconsistent obligations," given the existence of the LA Action in which Celtic is named as the primary defendant and Defendants are named as third-party defendants. ECF 23-1, at 7. If Celtic is found liable in the LA Action and Defendants "are found to have contributed to the loss," Defendants argue, they will "face overlapping and potentially inconsistent obligations arising from the same nucleus of operative facts." *Id.* at 8. Ultimately, Defendants contend, they "could be held fully liable in this action while simultaneously being subjected to contribution and indemnification claims by Celtic in Louisiana, resulting in duplicative exposure for the same loss." *Id.*

In response, XL states that it "does not see this potential result" and "does not perceive a risk that Defendants will be subject to multiple or inconsistent obligations as a result of [the LA Action] as . . . it is unclear what, if any, duties [Defendants] owed Celtic under the facts of this case, and any liability appears to be exclusively indemnification and/or contribution." ECF 26, at 7. Consequently, XL argues, "whether Defendants are liable to Celtic for indemnification or contribution with respect to TMT's or XL's claims is independent of whether [Defendants] are liable to XL." *Id.* XL does not cite any case law in support of why it "does not see this potential result" or for its "perce[ption]" that Defendants do not face a risk of multiple obligations. *See id.*

Courts in this district have held that a risk of double or inconsistent obligations arises when two courts are asked to decide essentially the same issue. *See R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 503–04 (D. Md. 2007); *see also Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999) (finding "high potential for inconsistent judgments" when two courts were asked

to interpret the same contract); *Schlumberger Indus., Inc. v. Nat. Sur. Corp.*, 36 F.3d 1274, 1287 (4th Cir. 1994) (noting that if "two courts handle different aspects of the case separately, the possibility of inconsistent judgments arises"); *Hanna*, 750 F.3d at 434–35 (explaining that the "existence of two concurrent proceedings here creates a 'high likelihood' that one or more of the parties will be subject to conflicting obligations"); *Gilliand v. Kock Trucking, Inc.*, Civ. No. JFM-11-3073, 2015 WL 2395148, at *5 (D. Md. May 19, 2015) (explaining that a party's "centrality and necessity is also shown by the effect on the remaining defendants of proceeding without it" and that "the possibility that two courts would reach different conclusions regarding [] identical . . . factual allegations [presents] the kind of 'incongruous results' that the Fourth Circuit has held are 'grounds for finding a non-joined party necessary'" (quoting *Owens-Illinois, Inc.*, 186 F.3d at 441)); *cf. Topiwala v. Wessell*, Civ. No. WDQ-11-0543, 2012 WL 122411, at *4 (D. Md. Jan. 12, 2012) (finding no risk of double or inconsistent rulings when two different courts were asked to resolve different issues given that "a finding that the defendants are liable in this action will not conflict with a finding in another action that [the party sought to be joined] is not liable to the plaintiffs").

Here, XL has acknowledged that "the loss underlying the [LA Action] is the same loss at issue in this case." ECF 26, at 3. In both the LA action and this case, then, a district court is asked to rule on the same issue of liability arising from the same set of alleged facts related to the lost Cargo. Inconsistent findings of fact or law between the two courts could subject Defendants to double or multiple obligations if Celtic is not joined to this case. For example, if Defendants are found liable as third-party defendants in the LA Action and they are also found liable in this action, they will incur double liability arising from the same set of alleged facts. Because two courts are

asked to decide substantially the same issue that could expose Defendants to double liability if Celtic is not joined to this case, Celtic is a necessary party under Rule 19(a)(1)(B)(ii).

**B. Whether Joining Celtic is Feasible**

Having found that Celtic is a necessary party, the Court next considers whether joining Celtic is feasible. Defendants argue that joining Celtic is not feasible due to the pending LA Action and the "first-to-file rule" adopted in the Fourth Circuit, ECF 23-1, at 8–10, which gives "priority to the first suit absent showing of a balance of convenience in favor of the second." *Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 Fed. App'x 297, 300–01 (citing *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)). The Fourth Circuit has "explained that this rule 'yields to the interests of justice, and will not be applied when a court finds compelling circumstances supporting its abrogation,' including 'bad faith, anticipatory suit, and forum shopping.'" *Coastal Lab'ys, Inc. v. Jolly*, 502 F. Supp. 3d 1003, 1024 (D. Md. 2020) (first quoting *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F. Supp. 2d 330, 337–38 (D. Md. 2011), then quoting *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 901 (D. Md. 2008)). In response, Plaintiff argues that "the first-to-file rule is not absolute but is rather a discretionary doctrine subject to exceptions when justice requires," and that the stayed nature of the LA Action could "result in indefinite delay of resolution" such that XL should be permitted to proceed in Maryland. ECF 26, at 9.

Neither party cites authority for or against applying the first-to-file rule in the context of a Rule 12(b)(7) motion to dismiss for failure to join a necessary party under Rule 19. *See* ECF 23-1, at 8–10; ECF 26, at 8–9; ECF 27, at 9–10. However, in each of the cases cited by the parties and in additional cases identify by the Court, courts have applied the first-to-file rule to determine which of two similar or identical actions should proceed and whether a case should be dismissed

or transferred due to improper venue, not to determine whether to join a party to an existing suit when a similar suit exists in another district. *See Coastal Lab'ys, Inc.*, 502 F. Supp. 3d at 1024 (applying first-to-file rule in context of motion to dismiss for improper venue or to transfer venue); *Cluck-U, Corp. v. Cluck-U Chicken, Inc.*, Civ. No. PWG-15-3439, 2016 WL 9526438, at *4 (D. Md. May 27, 2016) (same); *Siemens Energy, Inc. v. CSX Transp., Inc.*, Civ. No. RDB-15-1072, 2016 WL 1059261, at *3 (D. Md. Mar. 17, 2016) (same); *Neuralstem, Inc.*, 573 F. Supp. 2d at 900 (applying first-to-file rule in context of motion to transfer venue); *Sierra Club v. Nat. Marine Fisheries Serv.*, Civ. No. DLB-25-1627, 2025 WL 3706503, at *8–9 (D. Md. Dec. 22, 2025) (same); *Nanjing 3H Med. Prods. Co., Ltd. v. KT Health, LLC*, Civ. No. RDB-24-2745, 2026 WL 2619904, at *9–10 (D. Md. Sep. 4, 2026) (same); *Moore v. Circosta*, No. 5:20-CV-507-D, 2020 WL 5880129, at *8 (E.D.N.C. Oct. 3, 2020) (same); *Kendus v. USPack Servs. LLC*, Civ. No. SAG-19-496, 2020 WL 1158570, at *2–3 (D. Md. Mar. 10, 2020) (same); *Smiley v. Ariz. Beverages, LLC*, Civ. No. MJM-23-1107, 2024 WL 327044, at *2 (D. Md. Jan. 29, 2024) (applying first-to-file rule in context of motion to stay proceedings pending resolution of parallel matter in separate district court); *LWRC Intern., LLC*, 838 F. Supp. 2d at 337–38 (applying first-to-file rule to determine "which of two identical or substantially similar suits should proceed"); *Learning Network, Inc.*, 11 Fed. App'x at 300–01 (affirming district court's injunction barring appellant from filing a similar action in a different court under first-to-file rule); *Ellicott Mach. Corp.*, 502 F.2d at 182 (reversing district court's denial of motion to transfer venue and granting motion to enjoin party from prosecuting similar case in other venue). In other words, the first-to-file rule serves the "purposes of choosing among possible venues when parallel litigation has been instituted in separate courts," *LWRC Intern., LLC*, 838 F. Supp. 2d at 337 (quotation omitted).

In contrast, here, both the LA Action and this action are already pending. The question before the court is not whether to transfer or dismiss the case due to improper venue, nor which of the two pending cases should proceed—the type of situation in which courts have applied the first-to-file rule. Instead, the question before the Court, having found that Celtic is a necessary party, is whether Celtic can feasibly be joined or whether the case should be dismissed for failure to join a necessary party. In the absence of authority to suggest that the first-to-file rule governs Rule 12(b)(7) motions to dismiss for failure to join a necessary party under Rule 19, the Court cannot conclude that the first-to-file rule precludes the joinder of Celtic as a necessary party.[9]

Because it is feasible to join Celtic as a party, the Court need not reach the parties' arguments regarding whether Celtic is an indispensable party such that if it were not joined, the case would need to be dismissed. *See* ECF 23-1, at 10–12; ECF 26, at 9–11; ECF 27, at 9–14.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to join Celtic as co-defendant is **GRANTED**, and its motion in the alternative to dismiss the case for failure to join is **DENIED**.

A separate implementing order will issue.

Dated: November 10, 2026

/s/
Brendan A. Hurson
United States District Judge

[9] The Court does not, however, reach the issue of whether the first-to-file rule would otherwise justify a stay of one of the two pending cases or a transfer of venue, as those issues are not before the Court.